*942 LOGUE, J.
Joaquin Blanco appeals the trial court’s denial of his motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. We affirm.
FACTS AND PROCEDURAL HISTORY
Our prior opinion upholding Blanco’s conviction summarized the facts underlying his conviction as follows:
Blanco was arrested and charged with trafficking when he sold crystal methamphetamine to an undercover police officer. Blanco claimed he was induced into making the sale by Jesus Felizzula, a State confidential informant who Blan-co met at an HIV facility. Prior to tidal, the State moved to exclude any reference to Blanco’s HIV condition or the details of Felizzula’s agreement with the State. The trial court granted the motion. Defense counsel’s request to voir dire the jury panel regarding their opinions on entrapment was denied. Thereafter, defense counsel accepted the jury without renewing his objection to the restricted voir dire.
At trial, Blanco revealed that he met Felizzula while attending a facility for persons with HIV/AIDS where Felizzula served as Blanco’s mentor. The two men later became lovers. At the time, Feliz-zula, a convicted drug trafficker, was under a plea agreement which required him to produce trafficking level cases for the State. Blanco testified that he knew that Felizzula took drugs, and he was very much against it. Blanco did not take illegal drugs, and had never before or since this occurrence sold drugs.
At one point in their relationship, Blan-co, who was a real estate agent, sold Felizzula’s home. Felizzula was not satisfied with the amount he received from the sale. Subsequently, Felizzula moved out of the state, but called Blanco asking for his assistance in arranging a drug deal in Miami. Felizzula insisted that Blanco should do this to prove his love and to make amends for the money lost on Felizzula’s home. After repeated refusals, Blanco eventually relented and agreed to facilitate the sale.
Felizzula contacted his police handler, who referred him to undercover narcotics agent Chris Villano. Felizzula informed Villano that Blanco would sell him five eight-balls of crystal methamphetamine. Villano’s telephone call to Blanco was recorded and played to the jury. The two men began with a political discussion and then talked about the drug deal using coded language. Villano explained that conversations of this type usually used a code to avoid detection. Blanco testified that because he was unfamiliar with the code being used, he simultaneously received instructions from Felizzula online. The telephone call was followed by an exchange of telephonic text messages through which Blanco and Villano agreed to meet. Blanco testified that prior to meeting with Villano, Felizzula had someone deliver a white envelope to him. When he later met with Villano, Blanco turned over the envelope in exchange for the amount of cash previously agreed upon. The contraband was confiscated and Blanco was immediately arrested. A subsequent search of Blanco’s home and car revealed no other drags. The jury rejected Blanco’s entrapment defense and returned a guilty verdict.
Blanco v. State, 89 So.3d 933, 935-36 (Fla. 3d DCA 2012).
After his conviction was upheld on direct appeal, Blanco filed a post-conviction motion in the trial court alleging, ineffective assistance of trial counsel. Among other claims, he argued that his trial counsel was *943 ineffective in failing to move to dismiss based on his entrapment defense. The trial court disagreed. It concluded that the failure to move to dismiss did not reflect ineffective assistance of counsel because the question of whether Blanco was predisposed to commit the crime was a question for the jury given the facts of this case. The trial court denied Blanco’s post-conviction motion and this appeal followed.[1]
ANALYSIS
On appeal, Blanco argues that the trial court erred in concluding that the jury could rely upon his use of drug-trade jargon during the drug transaction to prove predisposition. He contends that these statements cannot form a basis for a finding of predisposition because the statements were made after the government induced him to traffic in drugs. He essentially asks this court to fashion a rule that a defendant’s conduct after the government induced him to commit an offense is never relevant to prove predisposition. This proposed rule paints with too broad a brush. While “care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement,” Munoz v. State, 629 So.2d 90, 99 (Fla. 1993), post-inducement acts and statements can, in appropriate circumstances, be relevant to prove that the defendant was predisposed to commit the crime before he was induced to do so. This case is one such example.
Florida law recognizes two distinct entrapment defenses: objective entrapment and subjective entrapment. Objective entrapment focuses on law enforcement’s conduct and whether the conduct amounts to a due process violation under article I, section 9, of the Florida Constitution. Munoz, 629 So.2d at 98-99. This inquiry turns on whether “the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.” State v. Glosson, 462 So.2d 1082, 1084 (Fla. 1985) ^citation omitted) (holding an agreement to pay an informant a contingent fee conditioned on his cooperation and testimony in criminal prosecutions violated constitutional due process). A due process violation occurs regardless of a defendant’s predisposition to commit the crime. Id.
In contrast, subjective entrapment focuses on whether the defendant was predisposed to commit the crime. Jones v. State, 114 So.3d 1123, 1126 (Fla. 1st DCA 2013). This inquiry turns on whether the defendant was an “unwary innocent” who had no predisposition to commit the crime but was lured into doing so, or, instead, an “unwary criminal” who readily availed himself or herself of the opportunity to commit the crime. Id. (quoting Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)). Only the subjective entrapment defense is implicated in this appeal.
The Florida legislature’codified the elements of the subjective entrapment defense in section 777.201, Florida-Statutes (2010). It provides:
(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person, acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, He or she induces *944 or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
(2) A person prosecuted for a crime shall be acquitted if the person proves by a preponderance of the evidence that his or her criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.
Id.[2]
In analyzing this statute, the Florida Supreme Court directed courts to consider three questions. Munoz, 629 So.2d at 99-100. First, did an agent of the government induce the defendant to commit the offense? Id. at 99. This step places the burden on the defendant to prove inducement by a preponderance of the evidence. Id.
Second, was the defendant predisposed to commit the offense? Id. This step places the initial burden on the defendant to establish a lack of predisposition. Id. If the defendant produces evidence of a lack of predisposition, the burden then shifts to the prosecution to rebut this evidence by proof beyond a reasonable doubt. Id. “The state may prove predisposition with evidence of the defendant’s prior criminal activities, his reputation for such activities, reasonable suspicion of his involvement in such activity, or his ready acquiescence in the commission of the crime.” Jones, 114 So.3d at 1126 (quotation and citation omitted). “However, admission of evidence of predisposition is limited to the extent it demonstrates predisposition on the part of the accused both prior to and independent of the government acts.” Munoz, 629 So.2d at 99.[3]
Third, should the question of subjective entrapment be submitted to the jury? Id. at 101. Generally, this defense should be submitted to the jury because the issues of inducement and predisposition “ordinarily present questions of disputed facts to be submitted to the jury as the trier of fact.” Id. at 100. However, there are cases where the trial court can rule that the defendant was entrapped as a matter of law. This occurs when “the factual circumstances of a case are not in dispute,” “the accused establishes that the government induced the accused to commit the offense charged,” and “the State is unable to demonstrate sufficient evidence of predisposition prior to and independent of the government conduct at issue.” Id.[4]
*945 In this case, Blanco’s testimony established a prima facie case of inducement. See Jimenez v. State, 993 So.2d 553, 556 (Fla. 2d DCA 2008) (holding, under similar circumstances, that the defendant demonstrated inducement); State v. Henderson, 955 So.2d 1193, 1195 (Fla. 4th DCA 2007) (“Inducement includes persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.”) (emphasis added) (quotation and citation omitted). He also provided evidence of a lack of predisposition based on his testimony that he had no criminal record or history of distributing drugs. See Jimenez, 993 So.2d at 556 (“[The defendant] ... sufficiently alleged that he had no predisposition to commit the crime by claiming that he has no prior criminal history and ‘no history whatsoever of engaging in drug distribution.’ ”).
Because Blanco established a prima fa-cie case of inducement, the burden shifted to the State to present sufficient evidence of predisposition. Citing to Munoz, Blanco argues that his use of drug-trade jargon during the drag transaction is irrelevant to prove predisposition because it occurred after the government induced him to commit the offense. He primarily relies on the following passage from the Munoz opinion: “admission of evidence of predisposition is limited to the extent it demonstrates predisposition on the part of the accused both prior to and independent of the government acts.” 629 So.2d at 99.
Blanco is misreading Munoz on this point. The passage of Munoz he cites does not categorically bar consideration of post-inducement conduct when deciding whether the defendant was predisposed to commit the crime. Rather, the passage indicates that post-inducement evidence can be admissible if it tends to show that the defendant was predisposed to commit the crime before the government induced him. In other words, the evidence may arise post-inducement, but it must tend to establish that the defendant was predisposed to commit the crime before the inducement.
Other passages in Munoz support this interpretation. The Court explained that “[i]n rebutting the defendant’s evidence of lack of predisposition, the prosecution may make ‘an appropriate and searching inquiry1 into the conduct of the accused.” Id. at 99. It further stated that “care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement.” Id. Requiring care is not the same as adopting a blanket exclusion.
Consider the following hypothetical: at a post-inducement drug deal, the defendant is recorded as saying, “I am glad we met last week and agreed to do business. I have bought this drag fifty times over the last two years from many different dealers, but never before did I get such good product at such a reasonable price.” This statement obviously tends to show that the defendant was predisposed to buy drags prior to the inducement: it reflects that the defendant was regularly buying drags for years before the inducement.
Blanco’s argument to the contrary, that evidence arising after the inducement must be excluded because it is per se irrelevant to prove predisposition to commit the crime before the inducement, has been uniformly rejected by the courts that have considered it.
In Jones, the First District rejected the argument that Munoz requires a blanket *946 exclusion of post-inducement evidence. In that case, the State charged the defendant with drug trafficking after he sold hydro-codone pills to an undercover police officer. Jones, 114 So.3d at 1125. The defendant raised a subjective entrapment defense, and, in response, the State sought to admit a video into evidence which depicted a different, uncharged incident of a drug transaction involving the defendant. The defendant sought to exclude this evidence on the basis that the transaction occurred after an officer induced him to purchase drugs. The trial court disagreed with the defendant and admitted the video as rebuttal evidence. Id. On appeal, the First District affirmed the defendant’s conviction and rejected his contention that the State may: rely only on “pre-inducement” conduct to establish predisposition. Id. at 1126-27. In doing so, the First District cited to Munoz:
- Appellant presents no legal authority to support his contention that the State may only' rely on “pre-inducement” criminal conduct to establish predisposition.' On the other hand, the supreme court in Munoz indicated that post-inducement- acts can be relevant to proving predisposition. Discussing methods the prosecution may employ to rebut an entrapment claim, the court stated, “care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement.” Munoz, 629 So.2d at 99 (emphasis added). Arguably dictum, this statement nonetheless refutes Appellant’s assertion that criminal acts undertaken after alleged inducement by law enforcement are categorically irrelevant to prove predisposition.
Id. at 1126.
Moreover, this court’s earlier opinion upholding Blanco’s conviction demonstrates that post-inducement conduct can be relevant to prove predisposition. Among other issues raised on appeal, this court had to decide whether the portion of the taped conversation between Blanco and the undercover officer discussing political issues was relevant to prove predisposition. Blanco, 89 So.3d at 936. The political discussion had immediately preceded Blan-co’s use of drug-trade jargon to complete the drug deal. Id. at 935. Blanco argued that the political discussion was irrelevant and highly prejudicial. The State responded by asserting that the evidence “tended to rebut Blanco’s portrayal of his character as one easily influenced.” Id. at 936. This court agreed with the State that the evidence was relevant and admissible, citing to, among other cases, Munoz. Id. at 937.[5]
In addition, the Fifth District has held that the post-inducement use of drug-trade jargon is relevant to prove predisposition. In Sallomi v. State, 629 So.2d 969 (Fla. 5th DCA 1993), the State charged the defendant with possessing and selling cocaine. At trial, the defendant claimed entrapment. The jury rejected his defense and convicted him of the charged offenses. On appeal, the Fifth District held that sufficient evidence supported a finding of predisposition, including the defendant’s recorded references to his supplier, the presence of cocaine in the trunk of his car, and his demand for cash up front for an “eight ball” (drug-trade jargon referring *947 to an eighth of an ounce of cocaine). Id. at 970.
As Munoz, Jones, and Sallomi recognize, a defendant’s use of drug-trade jargon at the post-inducement drug transaction can form the basis of a jury’s finding that the defendant was an experienced and willing drug dealer. Here, the jury heard Blanco’s testimony and the recording of his conversation with the undercover officer. It had the opportunity to determine whether he sounded like an “unwary innocent” or, instead, an “unwary criminal” who readily availed himself of the opportunity to commit the crime. It is within the province of the jury to do so. See Munoz, 629 So.2d at 100. (“[W]e construe section 777.201 as requiring the question of predisposition to be submitted to a jury when factual issues are in dispute or when reasonable persons could draw different conclusions from the facts.”); Vanhoosen v. State, 469 So.2d 230, 231 (Fla. 1st DCA 1985) (“[Florida Rule of Criminal Procedure] 3.190(c)(4) motions should be granted rarely since factual disputes are to be resolved by the jury.”).
For these reasons, we reject Blan-co’s contention that a defendant’s post-inducement use of drug-trade jargon during a drug transaction is per se irrelevant to the issue of whether the defendant was predisposed to traffic in drugs.
Affirmed.
FERNANDEZ, J., concurs.

. In addition to Blanco’s argument regarding predisposition, the trial court rejected seven other claims he raised in Ins post-conviction motion. We affirm the trial court’s rulings on those claims without further discussion. ■

. Section 777.201 may not, by its express terms, limit its application to subjective entrapment, but the Florida Supreme Court held that it does not govern tire objective entrapment defense: "in the presence of egregious law enforcement conduct, an entrapment defense is to be evaluated under the due process provision of article I, section 9, of the Florida Constitution.” Munoz, 629 So.2d at 99. This statement reflects the principle that the legislature cannot abrogate a defendant's due process rights. Id. at 98.

. If there is no evidence of inducement or a lack of predisposition, a defendant is not entitled to a jury instruction on subjective entrapment. See, e.g., Davis v. State, 937 So.2d 300, 303-04 (Fla. 4th DCA 2006).

.Although section 777.201 arguably requires the issue of entrapment to be submitted to the jury, the Florida Supreme Court rejected such an interpretation of the statute:
Under the constitution of this state, juries, as the finders of fact, decide factually disputed issues and judges apply the law to the facts as those facts are found by the jury. To construe section 777.201 as mandating that the issue of entrapment is to be submitted to a jury for determination as a matter of law would result in an unconstitutional *945 construction that would violate article I, section 9, of the Florida Constitution.
Munoz, 629 So.2d at 101.

. Arguably, this court's holding regarding whether the political discussion was relevant to prove predisposition resolved the question here regarding whether . post-inducement statements can be relevant to prove predisposition, The State, however, did not raise a "law of the case” argument in the trial court or on appeal. We therefore decline to reach this issue.