937 So.2d 300 (2006)
Jerome DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-2078.
District Court of Appeal of Florida, Fourth District.
September 20, 2006.
*301 Carey Haughwout, Public Defender, and Richard B. Greene, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
BATEMAN, THOMAS H. III, Associate Judge.
Following a jury trial, Jerome Davis was convicted of one count of sale of cocaine and one count of possession of cocaine. The only issue raised in this appeal is whether the trial judge erred in denying Davis's request for a jury instruction on entrapment. We affirm.
Davis was arrested for the sale of crack cocaine to a confidential informant (CI) of the Indian River Sheriff's Office. The CI was a professional informant employed by five law enforcement agencies to buy drugs on the street. On April 29, 2004, the CI was issued twenty dollars from Deputy Rodriquez to buy crack cocaine. A video camera was attached to the headrest of the CI's car and recorded the entire transaction between the CI and Davis. As the transaction was occurring, Deputy Rodriquez drove around the area monitoring the video and audio of the sale. After *302 the sale, the CI drove to a pre-arranged location and gave Deputy Rodriquez the evidence. Within minutes, Davis was arrested. The twenty dollar bill the CI used to purchase the crack cocaine was found on Davis. At trial, the video showing the drug transaction was shown to the jury, and an expert testified that the substance the CI purchased from Davis was crack cocaine.
Davis claimed at trial that he was induced into the drug transaction because of the loose-fitting garments the CI wore. Davis alleged that these garments showed her entire breast and also asserted that the conversation between them was about having sex. However, the record reflects the majority of the "conversation" was with another person who accompanied Davis, and took place when Davis went to get the crack from a person sitting in a car some distance away. Moreover, the "conversation" consisted mainly of the second person making suggestive sexual comments about the CI's good looks. At trial, the CI testified that even if the "conversation" involved sexual overtones, she clearly told Davis, "No." She also testified that she normally wore loose cotton shorts, a tank top, and no under-garments, along with sandals or flip flops, to fit the role of a crack buyer.
Davis requested an entrapment instruction, claiming there was a clear inference of entrapment as evidenced by the CI's improper innuendo, her impetus to produce for the law enforcement agency and her manner of dress. The trial court denied the requested instruction, finding that the entrapment defense was not supported by the evidence.
It is axiomatic that a defendant is entitled to have the jury instructed on the rule of law applicable to the theory of defense if there is any evidence to support the instruction. Evans v. State, 831 So.2d 808 (Fla. 4th DCA 2002). And, if some evidence has been presented at trial that suggests the possibility of entrapment, a defendant has the right to have the jury instructed on the law of entrapment. Thomas v. State, 547 So.2d 989 (Fla. 1st DCA 1989). It is not necessary to convince the trial judge of the merits of the entrapment defense because the judge may not reweigh the evidence to determine if the instruction is appropriate. It is enough if the entrapment defense is suggested by the evidence presented at trial. Chavers v. State, 901 So.2d 409 (Fla. 1st DCA 2005).
Trial judges have wide discretion in decisions regarding jury instructions. The discretion is narrower in a criminal case due to the defendant's right to have the jury instructed as to the theory of a valid defense. Goode v. State, 856 So.2d 1101 (Fla. 1st DCA 2003). However, appellate courts will not reverse the trial court's decision in the absence of prejudicial error that would result in a miscarriage of justice. Lewis v. State, 693 So.2d 1055 (Fla. 4th DCA 1997).
There are two types of entrapment: objective and subjective. Objective entrapment analysis focuses on the conduct of law enforcement. Objective entrapment operates as a bar to prosecution in those instances where the government's conduct "so offends decency or a sense of justice" that it amounts to a denial of due process. State v. Blanco, 896 So.2d 900, 901 (Fla. 4th DCA 2005). Subjective entrapment analysis is applied in the absence of egregious law enforcement conduct and focuses on inducement of the accused based on an apparent lack of predisposition to commit the offense. See Munoz v. State, 629 So.2d 90, 98-99 (Fla.1993). We apply the subjective entrapment analysis in this case.
*303 An accused has the initial burden of establishing by the preponderance of the evidence that he was induced to commit the crime. The accused must demonstrate that an agent of the government induced him or her to commit the crime. Id. at 99. If the accused establishes inducement by the government then the accused must demonstrate a lack of predisposition to commit the crime. Id. If the accused produces evidence establishing lack of predisposition, the state is given the opportunity to rebut the evidence beyond a reasonable doubt. Id. The subjective test set forth in section 777.201, Florida Statutes, is the test to be applied on the issue of entrapment in the absence of egregious law enforcement conduct. Id.
In section 777.201(1), Florida Statutes, the Legislature has defined inducement as occurring when:
A law enforcement officer, a person engaged in cooperation with a law enforcement office, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
§ 777.201(1), Fla. Stat. (2005).
However, a subjective evaluation of an entrapment defense is not always one for the jury. Rather, when the evidence is not conflicting and the factual circumstances not in dispute, the determination of whether an accused has been entrapped is an issue that is determined as a matter of law by the trial judge. Munoz, 629 So.2d at 100 ("[W]e construe section 777.201 as requiring the question of predisposition to be submitted to a jury when factual issues are in dispute or when reasonable persons could draw different conclusions from the facts. In certain instances,. . . the trial judge and appellate courts clearly have the authority to rule on the issue as a matter of law.") (internal citations omitted).
We hold that Davis failed to demonstrate he was induced to commit the crime by the CI's dress or her "conversation" about sex and he failed to put forth any evidence of lack of predisposition.
Davis's claim that he was induced to sell the crack cocaine simply by the CI being a white woman in a predominately African-American neighborhood, and by her wearing loose-fitting clothing, is without merit and not deserving of further discussion. With regard to the "conversation" about sex, the record demonstrates that the small talk actually took place after Davis's return from getting the crack cocaine the CI offered to buy. During this brief post-purchase conversation, Davis asked the CI if she wanted to "hang out" and attempted to kiss her. She made it clear, however, that she was not interested. Such talk occurring after the sale could not have served as an inducement to Davis to commit the crime.
Finally, Davis failed to present any evidence of lack of predisposition. Munoz, 629 So.2d at 99 (defendant initially has burden to establish predisposition). The evidence in the record demonstrated that Davis approached the CI, who told him what she was looking for but expressed some reluctance at turning over the money, telling him she had been robbed before. Davis gave the CI assurances that he could get the crack from his friend parked in a car on the other side of the bar. And he did just that. Clearly, Davis *304 was ready and willing to sell the crack cocaine at that opportune moment.
Accordingly, the trial judge did not err in refusing to give an entrapment instruction to the jury.
Affirmed.
STEVENSON, C.J., and STONE, J., concur.